We'll move to argument next in No. 21-397, Wang v. Delphin-Rittmon. And we'll wait for counsel to come up to the front of the room. Mr. Romberg, whenever you are ready. Thank you. Good morning, your honors. May it please the court. John Romberg for Seton Hall Law School Center for Social Justice, representing Plaintiff Appellant Wang. In a moment, my co-counsel will argue explaining why three of Mr. Wang's claims are substantively viable and should not have been dismissed. I will first explain why the district court violated Rule 17c in this case. This court, in Forelli, held that Rule 17c requires that if a litigant has previously been adjudicated incompetent, that the district court is obligated to exercise its discretion in assessing the litigant's competency. Here, Mr. Wang had been adjudicated incompetent. The district court did not assess Mr. Wang's competency. The violation is straightforward. Defendants, however, argue that there's no violation. And the reason they suggest is because if the district court had sua sponte decided that it wanted to investigate the Connecticut state criminal court docket, it could have determined that Mr. Wang pleaded no low contendere as of September 22nd. But Wang did notify the district court that he was being moved from the mental health facility to a state correctional facility, right? So he didn't need to sua sponte investigate the docket. He could have been prompted to by Wang's filings. In theory, but he could have been moved to a different facility. Certainly, the district court didn't know what happened with Mr. Wang's competence, why he was being moved. And there's no evidence that the district court actually did investigate the criminal court docket to determine that Mr. Wang had pleaded. So before we get to whether the district court actually did do that, if in fact the district court did have information that indicated that the state court decided he was competent and therefore could enter, could proceed in his trial, was competent to stand trial, would that be sufficient to discharge the obligation to inquire into his competency? No. Having information is not the same from which it could have made a decision is not the same thing as actually making the decision. And the district court here did not decide that Mr. Wang. Well, that's kind of sidestepping the question a little bit. So I understand maybe if he had entered something on the record that said, having seen that the state court has determined that he's competent to stand trial, I determined that he's competent in these proceedings as well. Would that have been enough? My question is really, can the federal court rely on the state court? If the district court had, in fact, on the record stated, I rely on the plea to conclude that he's definitively restored to competency as of September 22nd, 2017, that would be an exercise of discretion that would remove one of our arguments. The second argument is that that would have been an abuse of discretion to conclude that Mr. Wang had been definitively restored to competency as of the date of his plea. That didn't happen here. It did nothing. So the question is, the language in Ferrelli, most likely an abuse of discretion, should be read as we, in fact, have read it, but only in two summary orders, on one of which I was, that it is an abuse of discretion not to do at least that first step. And that is what you're arguing. Yes, our first argument. In other words, with what we've held in two summary orders, we should make clear is the law under Ferrelli. Yes, and the Ninth Circuit has so recognized, and I would argue it's a, at the very least, a legal error automatically constituting an abuse of discretion for the district court not to have made the determination. And if it had done so, that would satisfy its obligation to me. I'd rather rely on our summary orders than on the Ninth Circuit, but that's another matter. That may be just my old case. If you're right on this point, what's the remedy you seek? So the proper remedy is that all of Mr. Wang's claims need to be reinstated. We've explained in the briefing why he should be appointed pro bono counsel on remand, why that would be appropriate. Isn't that getting ahead of ourselves? The district court hasn't decided whether he's competent. It's possible the district court will determine he is competent. On remand. Because it wouldn't get counsel, so wouldn't it be premature to say he should be appointed counsel? On remand, the district court is once again obligated to do what it didn't do, which is to assess Mr. Wang's competency. We would expect that it might. But is it up to us to say whether he needs counsel at that stage, or is it up to the district court? I mean, isn't all you're really asking of us is to say district court, do what we say in our summary orders that Torelli said, and at that point, if you think counsel would be helpful, do it. But that isn't really, I mean, may make sense, but is that really something we should do? This court would not properly direct in all likelihood that counsel be appointed, although on occasion it has done so, but recognizing that it would be legally appropriate might be called for. Do you claim he's incompetent now? No. Mr. Wang, we represent Mr. Wang, who does not believe that he's incompetent, but when a litigant has And yet you want it sent back for a competency hearing? We want it sent back, and the law requires, Torelli requires, not even a summary order, requires a competency hearing. But if I can understand if it's reasonably disputed, but if you acknowledge he's not incompetent, why on earth would we want a competency hearing if he, through his counsel, says he's not? Because Rule 17c requires the district court to make that determination, and for a litigant who's been adjudicated incompetent But if your position is that he is competent, then doesn't it just follow that even if the district court erred, it would be harmless because you're saying he should be adjudicated competent? So we would remand for a competency hearing that will determine that he is competent, and then everything else will just proceed the way it already has. Remand would determine whether he's now competent five years later. The question of whether he was competent five years ago I understand you. That's what it would do. I'm wondering why we should bother doing that if he, through his lawyer, says he's competent. Okay, let me attempt to answer both your questions. The reason is because if a litigant has been adjudicated incompetent, his belief that he's competent is not dispositive of whether he's competent. Rule 17c requires the district court to make that determination, which it did not do. Remand is required. Well, but you're saying in any event that even if he is competent now, which could only be determined in a hearing, but if he's competent now but was perhaps not competent then, there was an error, and that error might have affected everything that followed, and that without a competency hearing, we cannot say that the judgment against him on these other things stands. Yes, absolutely. So is that your position, that he was incompetent five years ago when he had filed his papers? Our position is that it would be extremely difficult to determine five years later what a hearing at that time would have uncovered. Is that the issue, what it would have uncovered? We don't believe that's necessary. We believe the remedy at this point is a remand, first, on the record as it now stands, on the substantive viability of his claims. Independent of that, because of Rule 17c, it requires reinstating his- for a competency hearing. You're saying because he's competent, he would be adjudicated competent now, but then the district court would say, but he might have been incompetent five years ago, and so we're going to let him have a do-over with his filings because he might not have been competent when he filed them. I mean, usually we determine whether somebody's competent at the time, right? We're seeking a remand now, both because of the substantive viability of the claims and because- Let's put aside the substantive viability. I just want to get the implications of the competency hearing. So you're saying he's competent and will be adjudicated competent now. What difference would it make if we remanded it? The difference it would make, as Judge Calabresi suggested, is our argument is remand is required because of the Rule 17 violation five years ago. I'm acknowledging that on remand, the district court is once again- But rules say lots of things, but if in a particular case they don't matter, we don't waste everybody's time. Yeah, so what is the prejudice to your client and how would it be fixed if it was remanded for a competency hearing, I guess is the question. And here's why it matters. Even assuming that he's competent on remand, the question remains, was he competent five years ago? We are- We care. We care because there was a violation and under Berrios and under Ferrelli, that requires reinstating all of his claims. You're not so much interested in having a competency hearing now. What you're interested in saying and having us hold is the failure to hold a competency hearing then was error in itself and therefore all that followed after does not stand. Precisely. And therefore, what you're asking us to do is to vacate regardless of how we feel about the merits because there was an error that undertook that. That's what you're asking. Exactly, Your Honor. When you stand there and say he's competent now, do you mean he thinks he's competent now or do you mean you as his lawyer having dealt with him have come to the conclusion that he's competent now? Certainly we represent him and his position is that he's competent. In our interactions with him, he's a passionate, zealous litigant. I have not observed anything that would suggest his incompetence, but I'm not a trained psychiatrist. I'm not a district court judge. I don't have the full information that would be appropriate to assess his competence. In my interactions with him years after the district court's error. So you would want the district court to decide now, regardless of what you're telling us, whether he is competent and then on that basis proceed to hear the claims that he made, which were dismissed or denied in summary judgment years ago, but which failed because at that time there was no competency, and so we don't know if when those things took place he acted appropriately. Exactly, exactly. So that's your position. So you think that even though you're saying he's competent now, he might very well have been incompetent when he wrote the complaints that were dismissed. Exactly. And so we should go back and he should have the benefit of a guardian ad litem or an attorney in order to pursue those claims. Yes. Or I suppose if he's competent now, but there's a finding that he might not have been competent then, he would have an opportunity to amend and he could just do it himself in his competent state. Yes. So when you say that he's competent now, you are not in fact conceding that he was competent at the relevant time for the filing of his claims. Correct. It's the district court's obligation to make. So the prejudice is that the district court dismissed claims that might have been filed by somebody who was incompetent to pursue them. Exactly. And it's not harmless or pointless because his competence five years later does not clear up the error from five years earlier when, as Connecticut concedes. Okay, so when you say that your position is that he's competent, that just means at this time. Correct. But your client is not maintaining that he was competent throughout this litigation. He has a personal belief, but obviously a litigant who's been adjudicated incompetent, his opinion about his own competence is not binding or controlling on the district court. That's why I asked you, were you relying on what he says or what you observed? And his position is that he is competent now from what I've observed many years after the district court. Answer his question. I'm not asking you to retrospectively assess. And I appreciate you're not a psychiatrist. So let me put it this way. From what you have observed now, have you any observable reason to think he's incompetent now? I believe he's demonstrating the same characteristics that the state believed required forcible medication. I don't believe. Have you observed anything to lead you to believe he is now incompetent? No, I have not. But I've observed the same behavior that led the state to forcibly medicate him five years ago. But in all candor, my interactions with him, he does not seem to be incompetent. But Mr. Wang's position and my honest sense are obviously not controlling. But in any event, you didn't see him five years ago. So let's just keep things straight, okay? Absolutely. The error five years ago requires vacating under Ferrelli and Berrios and a remand, at which we acknowledge competency would have to be determined. But even assuming he's found to be competent, that doesn't wipe away the error. The question of whether now the district court would have to do a decision on competency is not the question before us. And we shouldn't confuse that question with the question before us, which is, did the court err five years ago in not doing this, and did that error create possible harm? So let's not confuse today with then. Absolutely. Okay, thank you very much, Mr. Romberg. We'll hear from you again, but we're going to hear from the other attorney for the appellant, Mr. Sheehan. Good morning, Your Honors. May it please the court. Keegan Sheehan for the Seton Hall Law School Center for Social Justice. Also on behalf of Plaintiff Appellant Wang. Mr. Wang raised three viable claims on the record as it now stands. First, a failure to protect claim arising out of his attack by fellow inmate Green. Second, a failure to treat Mr. Wang for the harm suffered in that attack. And third, a First Amendment retaliation claim. As for the failure to protect claim, the district court made two errors. First, it applied the incorrect legal standard, requiring that the defendants have actual subjective awareness of the risk of harm, as opposed to the appropriate 14- Excuse me. I don't see why we get that far. He did not file an adequate 56-1A. Now, had he been competent, he might have filed that. He made an affidavit which the court felt was not adequate to raise an issue of fact. Had he been competent, he might have raised, written a different affidavit. Isn't that all that you need? And indeed, all you can argue to us. I have no idea what the merits of this thing are, and I don't see how I can decide them on a court of appeals. All I need to do is see whether there was some error that was, that followed potentially from the failure to do a competency hearing. So why are we talking about war? I bet the others may have a different view of this. So while it's true, you know, Mr. Wang didn't technically comply with the local rule 56-A, the defendants concede that the district court properly considered Mr. Wang's supplementary and- Why on earth do you do that? I'm sorry, Your Honor? Why do you on earth concede that? You said the defendants concede. The defendants concede, so we can ask the defendants that. But I guess in answer to Judge Calabresi's question, I suppose you would say you're arguing the merits of the claims because even if we were to disagree with you that the district court erred in not doing a competency hearing, you still think your client is entitled to relief because of the way that the claims themselves were adjudicated. Is that right? That's correct, Your Honor. There are enough in the factual allegations on the record as to this claim to state a plausible deliberate indifference claim as to Golden-Ramos and also to survive- So you don't disagree that if in fact we were to agree that the district court was required to hold a competency hearing and therefore everything that happened after needed to be redone, that this argument would be moved? This is an alternative argument. Well, Your Honor, I think certainly the outcome of the competency hearing would change, would potentially change the merits issues. But in this particular instance, assuming that the competency hearing, they did find him to be competent- You still have to make these arguments, I see. Correct. There were still errors made as to these claims just on the record as it stands now. Specifically, in addition, Mr. Wang alleges that the defendants observed the other inmate out in the hall after curfew. They watched him brandishing his fists angrily in Mr. Wang's face. They were standing nearby. They ordered Mr. Green to step back. He didn't comply, and yet they took no further action. Well, did they position themselves in between Green and Wang? No, Your Honor. The record suggests that they asked him to step back. He did not comply. And at that point, Mr. Wang specifically alleges there was a lull or a period of time in which they could have taken some further action. They could have stepped between the men, as you suggest. They could have ordered him to step back again. Or they could have sounded an alarm and had other staff respond. And yet they took no action. And that is, in this case, enough to state a claim that they failed to take reasonable action in the face of a risk that was apparent and that they should have known of. Well, the district court says at most they were negligent, that that's what the record shows, right? So maybe you disagree with that determination. But it's not as if the district court ignored some legal standard, right? So if, in fact, they had acted recklessly, the district court could not have said at most they were negligent because recklessness is more than negligence? Correct. The recklessness in this case was the conscious decision not to take action in the face of a substantial risk of harm that they knew or should have known about. Secondly, as to the failure to treat claim, Wayne alleges a viable claim against Frankel and Burness for their failure to treat him in the aftermath of the attack. And also a viable First Amendment retaliation claim, which I'm happy to answer any questions about. What exactly is the allegation about shaking his fist? Well, that is effectively what should have made clear. No, no, no. But what is it? Not what flows from it. What is it? Sure. So specifically, Mr. Wayne alleges that Golden Ramos were standing next to him as Green was in his face angrily shaking his fist, brandishing his fist, as if he was about to hit him. Aiming a blow? Correct. Aiming a blow at his face? I know what brandishing a weapon means. I'm not sure I know what brandishing a fist means. Well, holding his fist in his face as if he were angry and about to hit him. And that was enough on this record, given the time period that followed, for them to take some action to prevent Green from hitting Wayne, and they failed to do so. Did he hit him? He did hit him. How soon after he brandished? Well, Mr. Wayne alleges that there was a period of time in which they could have taken some action, and they did not. I'm not, it's not entirely clear from the record exactly how much time that was, but certainly enough time, as Mr. Wayne alleges, for the defendants to have taken some action. Are they in a general lockup with a lot of people, or is this a two-person, is this a two-person cell? This occurred in a hallway with ostensibly other rooms with other inmates in them. So they weren't roommates, they weren't cellmates. In other words, Mr. Green was in an area he wasn't supposed to be in. It wasn't a hallway? It's a hallway? Yes. This is not a general dormitory? This occurred, no, this is, there are rooms along the hallway that they live in, and this occurred inside, over in the doorway in the hallway of Mr. Wayne's room. Are they the only two in the hallway? The record is not entirely clear on that point, but my understanding is that they're not. That they're not the only two? Correct. At this time, at the time of this incident. Of course. So at the time of the incident, there's more than two people, and one of them is holding his fist, or as you say, brandishing, in front of the face of another inmate? Correct. And you want the guards to intervene at that point? Well, certainly they were under an obligation to take some further action, to take reasonable action in the face of others, and certainly it's not our point. And you say that they should have taken this action even though there were other inmates that they were supposed to be looking after? That's my problem, is if we're talking about recklessness and not just negligence, the fact that there are others around makes it a little bit harder to say that they were reckless in not stepping in there, and they were also looking after others. Isn't that the argument the other way? Well, the way that I understand the record, Your Honor, is that it was after curfew, so if there were other individuals, they were meant to be in their rooms, they were not freely wandering around the halls. Mr. Green was where he shouldn't have been. And when Gold and Ramos responded, they were standing right next to the men. They certainly could have taken other action. And as to Defendant Williams, who was assigned to counsel and observation, Mr. Wang never alleges that she needed to leave her post to take further action. She was, in fact, a head forensic treatment specialist and could have ordered Gold and Ramos to take further action, could have ordered Green herself to step away, or sounded an alarm and had other people respond. So the only options weren't for them to take action to prevent the attack. What was going on there is sufficiently uncertain so that a different affidavit, a different statement, a different reply on the part of your client might move this thing just from negligent to reckless. It's just something was going on, and we'd like to know more, perhaps, than was there. I think that's correct, Your Honor. I think it could be made more clear. But I think even on the record as it stands, there's enough there to conclude that these defendants acted recklessly. No matter what he could have alleged five years ago, is it fair to say you are now alleging his case at its strongest? In other words, if this goes back down and there's more, you know, there's more. Aren't you now alleging the strongest version of the facts? On the record as we have it, yes. But could the record be different? It's possible that due to some discovery issues before the district court that there could be a fuller development of the facts. In fact, Mr. Wayne wasn't able to get video footage from the district court that may have made it clear just how much time there was. So you think if he had an attorney, he would be more likely to have obtained the video footage? Certainly possible, Your Honor. No, but if he were competent, he might say some things about what happened that are different. He might say, hey, this guy's about to hit me. Absolutely. I mean, we don't know what he might have said at that time. So how do we know whether what you are saying is the strongest case that he could make? It's the strongest case that he could make on the basis of what he said at a time when he might have been incompetent. Yes, Your Honor, and we think that in and of itself is enough error. So you're saying that if, in fact, he had a guardian ad litem or an attorney, he might have provided totally different allegations about what happened? I don't think that the allegations would have been different, but certainly there would have been a stronger foundation on which the court could make some adequate determination at summary judgment. But as the facts stand as they are, it's enough for a reasonable juror to conclude that these individuals, Gold, Ramos, and Williams, failed to take reasonable action in the face of a substantial risk of harm. Okay, I know that we've taken you past the time, but I have one last question, which is about the First Amendment retaliation claim. Did, in fact, the district court dismiss that claim? Didn't the district court say it's just not part of the same transaction and allow him to bring it in a different action? No, Your Honor. The district court did not discuss the retaliation claim in relation to Rule 20. In fact, the district court specifically dismissed the retaliation claim as implausible at A217, footnote 13. And actually, in an earlier complaint, the district court had acknowledged the retaliation claim against Valdez and others as being sufficiently related to be brought in the same complaint. It seems the district court construed it as a retaliation claim under the 14th Amendment and failed to properly construe it as one brought under the First Amendment. And that's where I think the issue with implausibility arises. I have a question with respect to the two treating or not treating physicians, the people. He claims they didn't treat him. How much do we have on the record on that? Again, I keep going back to my question. I mean, you know, this is a broken record of what he might have said had he been competent and said more, but we don't yet have. What do we have and what more might there be? Certainly, Your Honor. So the appendix, page 45, paragraph 78, Wang clarifies that he communicated to Dr. Frankel that he felt stunned, that he was still unable to give much information about the head injury that resulted from the attack, and that he had told Dr. Frankel that he, quote, had to push very hard in order to be able to speak. In other words, symptoms of dysarthria. And that following that, he specifically alleges the same paragraph, that Frankel had only asked Mr. Wang several questions and did not do any physical examination, and she had not checked Mr. Wang's vital signs either. She also alleges, A89, paragraph 15, that Burness had never seen Wang or examined him. And in these, these are in the immediate aftermath of the attack and then the three and a half weeks that followed the attack, no meaningful treatment from either of these individuals and no meaningful assessment. And that would certainly violate, that would certainly establish a failure to treat claim. Okay. Okay, thank you very much, Mr. Sheehan. We'll hear from you again in rebuttal, but let's turn to the appellees. Ms. Linehan. Good morning, Your Honors. My name is Mary Linehan, and I'm here representing the defendants today. And I believe there was no error in the court below, particularly with respect to the 17C question and whether or not the court should have held a hearing. At the time this case commenced, Mr. Wang was, had been adjudicated incompetent by a state criminal court, was at Whiting Hospital and being forcibly medicated to be restored to competency. He had been incompetent, then became competent, then became incompetent. Isn't this sufficient doubt so that 17C requires the district court to decide for itself whether he was competent? Our position, Your Honor, is that based on Berrios, Forelli, and Lewis, that they can be read together to say that at the time the court makes a ruling, the court needs to look at what the record is at that time, and at the time when this court made any ruling on the merits over the prejudice. Well, Berrios says that you can't have an adjudication on the merits if somebody is incompetent and isn't represented by an attorney or a guardian, right? Yes. And a guardian. It doesn't tell you when you have the obligation to make the inquiry into whether somebody is incompetent, right? No, but Forelli says that a court does not need to monitor anyone's competence and does not need to- Although Forelli does say, you know, in a case where there's been an adjudication of incompetence, it's as likely, it likely would be an abuse of discretion not to conduct such an inquiry. And here we have an adjudication of incompetence, don't we? I believe Forelli is referring to a case where there's been an adjudication of incompetence that is ignored by the court, and there's no later finding of competence, which is what we had here. So when was the later finding of competence? In June of 2017, Mr. Wang was found competent to stand trial. On September 22nd of 2017, he entered a plea and was sentenced. When he entered the Nolo Contingere plea, right? Yes. So now, did the district court know about that? On September 15th, well, to back up, Mr. Wang consistently informed the court that he was being- That's a different thing. Answer the question. Did the district court know of the accepted Nolo and of a finding of competence? What we are sure that the district court knew was that on September 15th, 2017, Mr. Wang wrote to the court and said, I am going to be leaving Whiting Hospital. This is with the background knowledge that Mr. Wang had provided to the court. Did Mr. Wang say that he was competent all the time that he was incompetent? Mr. Wang made allegations throughout that he was being forcibly medicated. In other words, his statement that he was competent at this later date is completely the same as the statement that he made earlier when he was deemed incompetent. Our position is not that the court could rely on his statement of competence. In fact, I don't think the letter says I've been found competent. It says I am being moved out of Whiting to the correctional- You're saying the district court can rely on the objective facts. So the district court knew from Mr. Wang's filings that he was being held at a psychiatric facility and was being medicated. Then the district court knew, based on his letter to the court, that he was leaving a psychiatric facility and being moved to a state correctional facility, which could only happen if he was adjudicated competent. Is that right? And sentenced. And so then you're saying the district court knew that the state court had determined that he was competent, and that's when the district court then could decide questions on the merits. Right, because at that point the court had no duty to keep monitoring. What was the district court doing up until that point? Every decision up until that point was either not on the merits or without prejudice. I understand, but that's my question. So the district court is entertaining these proceedings all along. He has a party that has been adjudicated incompetent. He's just waiting. Does he know the state court is doing this? You're saying because he had read from the filings that he was being medicated to restore him to competence, it was reasonable for the district court just to wait and see what happened. And he did not need to do an inquiry into- Yes. Do we know that that's what the district court was doing? Did the district court ever say anything like that? The district court never says. I thought your position was actually stronger than that, that it didn't matter what the district court said or knew. It mattered what was so. And what was so is that a state court had found him competent. Is that correct? Yes, Your Honor. The state court had found him competent. The state court had found him competent. And that is why the state court was permitted to accept his plea and sentence him. But that isn't what Farrelly says. Farrelly says that the district court most likely should do its own hearing. And we have had two summary orders afterwards that reversed the district court when it didn't do that. But I don't think- It would have found him competent. We haven't done that. We said 17C requires the court to do it. And there's a good reason for it because these cases are so messy. You know, it comes and goes and so on. And so the rule says your court should do it. But this court has guided district courts to kind of balance what would be an overwhelming burden of monitoring competence and has said, look to what the reason- Well, Farrelly even- so Farrelly does say that- or does suggest, because it uses the word likely, so it doesn't necessarily say. But it suggests that the district court has to do an inquiry into competence when there's been an adjudication of incompetence. But it doesn't say when that obligation terminates, right? So is your position that something here, maybe the state adjudication of competence, terminated even if the district court had a Farrelly obligation? That there's a key critical difference between this case and Farrelly because of the intervening finding of competence. And that's why when Farrelly says if there's a finding of incompetence- So you're not disagreeing with Farrelly. No. My point is, okay, so Farrelly says there's an obligation to have a competency hearing when there's been a previous adjudication of incompetence. And so maybe here that might have been triggered. But whatever the scope of that obligation is, it terminates when another court determines that somebody's competent. Is that- And I would look to Lewis, the case relied on by the plaintiffs, for some extra support there. But this case is more- Let me hear the Lewis point just before we get to the second question. So in Lewis, this court said that one of the problems there was that the person, the plaintiff in that case, had been recently transferred back to a state facility. And the court specifically uses the term at the time the court ruled. At the time, it knew that that person had been moved back to the facility. So to me, Lewis suggests that when making a determination about whether a 17C hearing is necessary, you look at what facts are present at the time you are about to make- the court is about to make a ruling on the merits or with prejudice. But that is a kind of funny rule, because that means the district court can just ignore the reality that somebody's before them who's been adjudicated incompetent. And as long as they're not reaching a merits ruling, they can just ignore that fact. I mean, it seems like- But Berio says that. The second part to your argument, which is it was reasonable for the district court to understand that somebody was making an effort to bring him to competence. And that's what he was waiting to see. That that seems to make a difference. I mean, would you say that if there was no such effort, if he had just been somebody who was in a mental institution, and there was no effort to bring him to competence, the district court could have just ignored the fact that he had been adjudicated incompetent until it decided to rule on the merits? Well, the summary judgment ruling was three years later, after the finding of competence. There was a great length of time- But my problem is this. This is somebody who was ruled incompetent, then was ruled competent, then was ruled incompetent, then was ruled competent. That is evidence past or present under 17C. Now, it's true that he was ruled competent, and maybe the court knew that, or maybe it didn't. But even assuming that the court knew that, how do we know, three years later, that he wasn't incompetent again? Because he'd been going up and down and up and down. So if 17C says, where you have evidence of problems, why, I would say, in any event, but certainly where somebody has been incompetent and incompetent, doesn't that say it's up to you now to do something which judges whether he is competent now, and then we review that under discretion? But 17C asks the court at least to do that? I believe this court has tried to balance putting a burden on a district court to monitor someone's competence. Answer my question. When somebody has been incompetent and then competent, and then incompetent and then competent, and then is before the court, doesn't 17C ask that the court expressly do something then and tell us why it deems him to be competent, so that we can then review that and say that's fair enough? I think it might be true even if there wasn't this up and down, but where somebody is in and out, how do we know? My response, Your Honor, is the most recent evidence available to the court was that he was competent. If you impose a burden on the court to do its own competency hearing, how often does the court need to do that? I'm not saying it had to do a competency hearing. I'm saying that under 17C it has to focus on the issue and tell us something. It could tell us that a competency hearing is needed. It could tell us that this time there is no reason to think that when he was made competent he hasn't remained competent, or it may say we need more. But doesn't the situation where there is an up and down require, at the very least, require that the court tell us something, do something? The problem with that approach, Your Honor, is if the court at that moment says we are going to look at his competence right now because he has been up and down and up and down, we would get a measure of his competence on that date. But if the summary judgment ruling is three years later, even if the court found him competent in September of 2017, he might have been incompetent somewhere in between. So you're imposing upon the court what you see. We are imposing on the court to do a very minimal thing. At what juncture? To assure that that might be another case. But in this case, they haven't done it then. They haven't done it three years later. The court did nothing at all to meet the requirements of 17C, which says when somebody has a certain history, it's up to you. We said most likely, but then we've applied it absolutely in summary orders, to tell us what's going on now. And whatever may be another case, in this case, I just don't see how the court did a little squat. Well, let me ask you this. If in the district court's decision it had added a sentence that said, I understand that Mr. Wang has been moved from the psychiatric facility to the state correctional facility, and therefore that there's been a determination of his competence to stand trial by the state courts, and given that that is the latest determination and he still is in the state facility, I have determined that he's competent. I suppose that would be the kind of determination on the record that we're talking about. Would that have made a difference in this case? It might have made a difference to this court to have proof that that's exactly what the court was thinking, because now we're relying on the assumption that that's what the court actually did. So you think that's what the court was doing? Yes. And we have this talk about going up and down, but the district court did know that he was still in the state correctional facility, right? The district court did know? Did know. Yes. That he was still there. He had not been moved back to the psychiatric facility. Exactly. There was nothing presented to the district court after his finding of competence when he sends a letter saying he is being moved, nothing to suggest that anything has changed in his competency status. We would then be able to review that district court's decision for an abuse of discretion, because we have said a finding of competence in both circumstances is subject to abuse of discretion. And then we would know much more about whether what, in this case, it was an abuse of discretion or not. But we can't say, because we don't know what the court, that the court even really focused on that issue. So we can't say. But the fact of the matter is that he had been ruled competent by a state court. When the court made its rulings on the merits and with prejudice, there was the most recent finding, three years prior, was that he was competent. And there was nothing in the record. Are you saying that 17C, despite its language of past and present evidence of incompetence, simply does not apply when there is a ruling by another court sometime before this hearing that the person was competent? That 17C then disappears from the book, even though it says past or present evidence of incompetence, which just requires a court to focus on it, that that disappears because some court has said he's competent? I would say, Your Honor, that based on the precedent of Berrios and Farrelly and Lewis, that the most recent competency finding in this case was sufficient grounds for this court. Of course, Rule 17C doesn't say anything about past and present findings of competence, right? Rule 17C doesn't say anything about when a district court is supposed to do a competency hearing, does it? No, but the precedent. So we're only talking about language in Farrelly that just said it's likely that if there's some adjudication of incompetence that a district court would abuse its discretion, right? But Farrelly didn't have the facts of a person who was later found competent. As you said a moment ago, you don't disagree with Farrelly. You're just saying, and your position does seem to be, a district court is allowed to rely on an adjudication of competence from a state court. Yes, Your Honor. And if another court has adjudicated somebody competent, that terminates the Farrelly obligation. That's your position. Until there is other evidence brought before the court that he has been found incompetent again. Farrelly doesn't say anything about when the obligation terminates. It says it arises when there's evidence of past adjudication of incompetence, but it's compatible with the rule. I mean, we haven't said this, so maybe the rule should be different, but it's at least compatible with what you're saying, which is that if then there's evidence that he's been determined to be competent by some authority, especially judicial authority, then the Farrelly obligation terminates. And I believe that— You could actually concede that maybe there was an obligation to do a competency hearing, but once there was a termination, but once the state court had judged him competent, that obligation terminated. There was an obligation if the court were to rule on the merits or with prejudice. It would have been obligated to do a 17C hearing prior. Prior to September 22nd. Okay. Now you're conceding something far beyond. You're saying that this wasn't because we didn't decide on the merits? First, why isn't a judgment of a dismissal a judgment on the merits? I mean, it's not a judgment on the merits in some sense, but it's a judgment on the merits. The motion to dismiss in this case was dismissed all on jurisdictional grounds, and that was not a judgment on the merits. You mean—now you're making a very different argument. You mean that if somebody has evidence of being incompetent the day before and the court dismisses on jurisdictional grounds, 17C is not violated? I mean, Berrio says that a district court can make rulings that are not on the merits and without prejudice, without doing a 17C hearing. Merits means very different things. If a ruling was a question of whether somebody would be held today or tomorrow, a hearing, that might be something on the merits. But doesn't dismissal for lack of jurisdiction, whatever merits means in other contexts means merits in that, it's a decision that settles the case. Now you're telling us that this guy would be okay, except that this decision wasn't on the merits. That seems to me absurd, I must say. It is my understanding, Your Honor, that dismissals based on subject matter jurisdiction are not decisions on the merits. And the motion to dismiss was dismissed on Younger, Rooker-Feldman, and on the lack of a federal question, all subject matter jurisdiction issues. There was no decision issued in this case on the merits or with prejudice prior to— Ms. Linehan, maybe you also have another argument, which I wanted to give you the opportunity to address before you sit down, about harmlessness. So even if we assume that there is an error in not having an adjudication of competency, it's always possible to say the error is harmless because there's no way the outcome could have been different. Do you take that position? Yes, we do, Your Honor. So one of the arguments you might make about subject matter jurisdiction is those questions had to be decided that way because they're jurisdictional. Exactly, and I think that's why they're allowed under Barrios. Rulings that are jurisdictional are not on the merits, so that's why you can rule on those. Can I ask you this question? So it is true that Mr. Wang was trying to obtain this security footage, and the district court wouldn't let him because the district court said, well, he still hasn't identified the claim he's pursuing to obtain this discovery and ordered him to file an amended complaint and so on. Isn't it the case that if he, like, assuming he was competent and if he had an attorney or wasn't competent and if he had an attorney at that time, the attorney might have better defined the claim and maybe he would have obtained the security camera footage? And I don't know, maybe it would not show anything different than the district court thought that happened, but we don't know that for sure, do we? It is possible that with an attorney his case might have been presented differently. With an attorney or without an attorney, the jurisdictional questions would have been answered the same. Okay, so that's the jurisdictional questions, but let me ask about the merits questions. So we had a back and forth with opposing counsel about where the aides were and whether the nurse is treated and so on. Wouldn't the security camera footage illuminate those facts? It may have, Your Honor. I don't know. I was not the attorney at the time that the discovery was conducted, so I don't know what the footage looked like. In fact, I'm not 100% sure that he did not receive that footage in the end. But my position is that even if he were found incompetent at any point in these proceedings by the district court, that does not mean he would have also been entitled to an attorney. May I just try to focus on what I think is an argument you made, and I want to be sure I understand that you're making it. You are saying that even if somebody has current evidence of incompetence, a 17C decision is not needed if the court dismisses the case on jurisdictional grounds because that is not a decision on the merits, and that that is so even though the jurisdictional grounds might have been countered by different evidence or things that a competent person would have brought in? My understanding of barriers is that that is exactly true, yes. Okay. Are you going to take a moment to tell us why no matter what the district judge should have done based on five years ago activities, the current claims as forcefully made by counsel don't show a federal violation? Certainly, Your Honor. Your Honor, our brief sets forth why each of the other grounds raised by the defendants do not. First of all, the claims that the trial court aired in denying the plaintiff Wang permission to add Ramos and Gould, the plaintiff claims now that the court applied the wrong legal standard. It certainly did not. The court applied the correct legal standard and found that neither Ramos nor Gould, the allegations did not support any finding that they had acted recklessly. At most, they had acted negligently, which is not sufficient to state a 1983 claim. As to Defendant Williams, the court also applied the correct legal standard and found that she had acted reasonably in maintaining her position. She was assigned to sit at the doorway of another patient at Whiting who was a high-risk patient. She was not allowed to leave that post. There's no allegation in the record that she could have done anything differently. There's no allegation that she had any alarm she could pull or any other steps that she could have taken. She saw two other staff members responding to the incident. She stayed where she was assigned to stay because of the risk involved in leaving that post. So certainly her behavior did not rise to the level of recklessness, and that's why that count was properly granted summary judgment. As to Defendants Burness and Dr. Franco, there was evidence in the summary judgment motion of the medical examinations that were conducted within an hour of the incident happening. There was records of a nurse going in to see Mr. Wang after the doctor's visit to be sure that he had any medication he needed in terms of pain medication. He refused anything. He refused ice packs. Sixteen hours later, APRN Burness went to see him and evaluated him and found no evidence of any harm. Counsel, did he deny that they treated him? He denies it in his allegations. Why doesn't that raise an issue? Because he has no, it's a self-serving conclusory statement with no support in the record. In fact, there are medical- Let me finish. Okay, I'm sorry. We have held recently that an affidavit raises an issue. Now, it may be that this affidavit is not a very good affidavit and is so flawed that it doesn't, but doesn't that cause a certain amount of problem? Because if the affidavit was not adequate, even though he said that, doesn't that say that somebody who was competent, if they were competent, might have, or a guardian like him, might have come to something which is close to an issue of fact and made it an issue of fact? It certainly is possible, Your Honor. If he had an attorney, that an attorney might have prepared- An affidavit- Something other than self-serving assertions and- Well, I guess also you would say, since we have the records of the medical treatment, that that attorney would have to show that they're all fraudulent and the whole thing is a big sham and it doesn't seem likely- Exactly. That anyone could establish that. Can I ask one last question, which is just about the First Amendment retaliation claim? Yes. So my understanding was that the district court said it could be brought in another action because it was not part of the same transaction, but opposing counsel disagreed with that. So why don't you tell me what you think happened to the First Amendment retaliation claim? I don't believe he sufficiently really raised a First Amendment retaliation claim. It's very unclear. He speaks about retaliation throughout each of his amended complaints. He never identifies it or perhaps once refers to it as a First Amendment claim. The court seemed to treat the retaliation as unconstitutional conditions of confinement, but the court noted in addressing the fourth amended complaint that a plaintiff weighing had dropped discrimination claims and kind of seemed to group them together. What ultimately our position is that whatever happened, if he had indeed alleged a First Amendment claim, he was instructed several times that those additional claims could be brought separately. So there was no harm, no prejudice to the fact that if the court did not include the First Amendment claim in this case, that he was free to bring that claim in a separate action and he was informed that repeatedly. Okay. I got that. Thank you very much, Ms. Linehan. Let's turn back to Mr. Romberg on rebuttal for one minute. Two quick points. First, about the relationship between Rule 17 and the substantive claims and then following up on Rule 17. So for the relationship, we'd argue that if Mr. Wang, though arguably incompetent five years ago, managed to create a material dispute of fact in the record, this court should so determine the Rule 17 is a fallback, which we think mandates dismissing all or vacating all of the district court's dismissals. But if he managed to state viable claims, that should take precedence and this court should so recognize. On the merits of the Rule 17, here the district court did not decide Rule 17. The defendant's argument is, I suppose, that one could infer that it implicitly did so because Mr. Wang wrote to the court saying he was being transferred to a state institution rather than the psychiatric facility. But there are plenty of mentally ill and incompetent litigants and inmates in state facilities, some of whom receive psychiatric medication. That simply does not demonstrate that he was competent. And indeed, the defendants have been candid. Does the court have to accept the fact that somebody who may be incompetent says he was transferred as a finding of fact? That's yet another reason why, given the district court did not make a conclusion, it's improper to rely on an inference about what the district court might theoretically Well, if the district court was allowed to rely on his transfer to another facility and he improperly relied on a misrepresentation, that would be a problem. But here it was accurate, right? So even if it were erroneous, it would be harmless if that's all that it was, whether he was supposed to rely on the representation. Mr. Wang wrote that he would be transferred. As I explained, that doesn't demonstrate that he's competent. And in fact, as defendants candidly admit, the state court order entered while he was being forcibly medicated, finding him competent, found him competent to stand trial but not competent to represent himself, mandating that his pro bono attorney continue to represent him in his criminal trial. So if the district court had actually looked into the district, into the criminal court docket, which there's no reason to think it did, it would have discovered that. That was while he was being forcibly medicated. As of September 22nd, he was no longer forcibly medicated. There's no reason to believe that he would forever remain competent after that point. Thank you, Mr. Romberg. We have one minute from Mr. Sheehan. Two quick points, Your Honor. First, as to the merits of the failure to protect claim, the best reading of the record, as it now stands, is that some rational jury could have found the defendants reckless. They had time to intervene, to stand between the men, but they took no action at all in the face of what was an obvious and substantial risk. And second, as to the First Amendment retaliation claim, the court addresses that claim in a supplemental appendix at page 18 and 19. The court did not dismiss any claims in the Fourth Amendment complaint under Rule 20, but at that site recognized the factual claims to be sufficiently interrelated to be raised in a single complaint and then rejected those claims on the merit, again construing it as what seems to be under the Fourteenth Amendment as opposed to the First Amendment. To be clear, the district court did not dismiss any claims in the Fourth Amendment complaint under Rule 20. Okay. Thank you very much, Mr. Sheehan. The case is submitted.